IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALONZO EDWARD SCURLOCK, ) | |
| ) | Case No. 7:12-cv-00322 |
| **Plaintiff,** ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| ) | |
| HARLEY LAPPIN, et. al., ) | By: Norman K. Moon |
| ) | United States District Judge |
| **Defendants.** ) | |

Plaintiff Alonzo Edward Scurlock, a federal inmate proceeding *pro se*, filed this civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Scurlock named as defendants the Federal Bureau of Prisons ("BOP"), former Director of the BOP Harley Lappin, and BOP employees David Allred, Michael Chamlee, Noland Crowe, J.L. Norwood, Terry O'Brien, Dennis Peliter, Lt. Pitts,[1] David Roff, and Todd Sloop (collectively, "Defendants"). Scurlock alleges that Defendants violated his constitutional rights while he was incarcerated at the United States Penitentiary – Lee ("USP Lee") from June 2008 until he was transferred to a different prison in December 2008.

Scurlock originally filed this action in the United States District Court for the District of Columbia, and Defendants filed a motion to dismiss the case in that court. The D.C. District Court granted Defendants' motion in part, dismissing Scurlock's constitutional tort and

---

[1] Lt. Pitts is deceased. Under Federal Rule of Civil Procedure 25(a), Scurlock was required to move to substitute within 90 days after receiving service of a statement noting Lt. Pitts's death. The United States District Court for the District of Columbia, in an order entered June 28, 2012, construed Defendants' assertion of Lt. Pitt's death in their motion to dismiss, filed in the D.C. District Court on August 14, 2011, as service of a statement noting the death which was properly served on Scurlock. The D.C. District Court gave Scurlock until August 31, 2012, to file a motion to substitute. Because Scurlock failed to file a motion to substitute as directed, I will dismiss all claims against Lt. Pitt.

conspiracy claims against the BOP and the individual defendants in their official capacities. *Scurlock v. Lappin*, 870 F. Supp. 2d 116, 124 (D.D.C. 2012). The court dismissed the constitutional tort claims for lack of subject matter jurisdiction because the United States has not waived its sovereign immunity and consented to *Bivens*-type suits against federal agencies. *Id.* at 119. The court also dismissed the conspiracy claims Plaintiff brought under 42 U.S.C. § 1985(3) because that section also does not waive the United States's sovereign immunity. *Id.* at 120. Plaintiff's remaining claims were transferred to this Court pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), and Defendants filed a motion to dismiss or, in the alternative, for summary judgment. For the following reasons, I will grant Defendants' motion.[2]

## I. BACKGROUND

On June 16, 2008, four days after undergoing surgery on his left shoulder, Scurlock self-surrendered and began his term of incarceration at USP Lee, where all individual defendants worked except Norwood, who worked in Philadelphia as the Regional Director of the Northeast Region of the BOP, and Lappin, who worked in Washington, D.C., as the director of the BOP. Although the Complaint does not contain enumerated claims, the D.C. District Court construed it as alleging that Defendants: (1) violated the First, Fourth, Fifth, Sixth, and Eighth Amendments to the U.S. Constitution (all Defendants); (2) engaged in a conspiracy to deny Scurlock his constitutional rights (all Defendants); (3) engaged in common-law false imprisonment (defendants Crowe, Pitts, Peliter, and Chamlee); and (4) engaged in common-law assault

---

[2] The defendants' motion to dismiss indicates that Scurlock may be attempting to bring a claim under the Federal Tort Claims Act ("FTCA"), stating that these claims are barred because he failed to file within the time requirements of the FTCA. However, Scurlock does not name the United States of America as a defendant, nor does he state he is bringing his claims pursuant to the FTCA, and I decline to construct an FTCA claim sua sponte on his behalf.

(Crowe). Scurlock alleges a number of facts in his Complaint and in an attached affidavit to support these claims.

According to Scurlock, he went to sick call on June 18, 2008, complaining of shoulder pain, but he was not given any medication. He claims that defendants Peliter and Crowe told him that he would not receive proper medical treatment while at USP Lee. Compl. at 20. On June 23, 2008, another prison officer "witnessed Officer Crowe snatch [Scurlock's] left arm out of the sling, twist his arm violently behind his back, placing handcuffs, then slamming [Scurlock] into the wall face first, then violently body slamming him." Compl. at 21. Thereafter, defendant Crowe allegedly picked Scurlock up by his arms and placed him on a plastic crate. Scurlock claims he was "kidnapped for a total of 30 minutes on defendant Crowe's own personal authority and not under the color of Federal or State law." Compl. at 21. When Scurlock requested the proper form to make a complaint regarding the incident, defendant Peliter told him "it will not be in your best interest to file against a staff member." *Id.* Scurlock also claims that defendants Swoop, Chamblee and Peliter "covered up" the assault by Crowe. Compl. at 22. Scurlock claims that he suffered a fractured skull and reinjured his shoulder, elbows, and knees due to Crowe's assault, and was in "total and constant debilitating pain." Compl. at 6.

Scurlock states that from June 23, 2008, until November 16, 2008, Crowe harassed and intimidated him by "depriving him of eating at times," waking him up at "odd hours," using racial slurs, and "touching and rubbing [him] and calling him 'sweet boy.'" Compl. at 7.[3] Scurlock states that defendants Lappin, Norwood, O'Brien, and Pitts "knew or should have

---

[3] Scurlock also claims that Officer Crowe blocked a doorway to prevent Scurlock from passing on June 31, 2008, placed him briefly in handcuffs on an unspecified date, "falsely arrested and kidnapped Scurlock and held him against his will for 43 minutes without any official BOP or any government interest" on an unspecified date, and ordered him to leave the kitchen without eating on October 15, 2008. *Id.* at 13.

known" about Crowe's improper activities. Scurlock also alleges that other defendant BOP employees verbally harassed him, specifically defendants Chamblee[4] and Lt. Pitts.[5]

On August 4, 2008, prison officials sent Scurlock to see a physical therapist, who allegedly told him that he should have been seen by an orthopedic specialist, and stated "there is no point in showing you any remedies for your shoulder" since the shoulder was not healing properly. *Id.* at 23–24. Scurlock further claims that Dr. Danoff told him on August 8, 2008, that his shoulder blade was fractured and he "should not do anything physically until after November. That means no rec[reation] and no work." Compl. at 24. Despite this assessment, Scurlock states that he was removed from medical idle on August 13, 2008, and placed on food service work detail. Even when he complained of pain, he was still not returned to medical idle.

Scurlock also claims that unspecified staff members "arranged" for another inmate to assault Scurlock on November 17, 2008. Finally, Scurlock states that the BOP prison camp where he was housed is understaffed, and that the BOP does not properly train or supervise the prison guards.

On December 3, 2008, Scurlock was transferred from USP Lee to FCI Ashland, located in Kentucky, and then on February 19, 2009, he was transferred to FCI Fort Dix, located in New Jersey. Scurlock asserts that he continued to receive inadequate medical treatment related to his shoulder while at FCI Ashland and FCI Fort Dix, alleging that prison officials refused to permit him to see an orthopedic specialist or have an MRI on his shoulder. Scurlock does not, however,

---

[4] Scurlock claims Chamblee used "obscene language." *Id.* at 23.

[5] Scurlock claims that Lt. Pitts "made terroristic threats" to him. *Id.* at 25.

name any of the doctors, medical staff, or prison staff at these institutions as defendants. Scurlock was released from custody on June 3, 2011.

Defendants argue in their motion to dismiss or, in the alternative, for summary judgment that Scurlock's claims fail for multiple reasons, including that Scurlock failed to exhaust his administrative remedies regarding most of his *Bivens* claims, his Eighth Amendment claims against Crowe are barred by the applicable statute of limitations, and his claim regarding deliberate indifference to a serious medical need fails to state a claim upon which relief may be granted.[6] Because defendants presented to the Court matters outside the pleadings in their motion to dismiss or in the alternative for summary judgment, which the Court did not exclude, and because Scurlock received notice and had an opportunity to respond to the motion and the additional matters submitted with it, the Court will treat defendants' motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

## II. LEGAL STANDARD

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In making this

---

[6] Defendants also argue that Scurlock's claims regarding conspiracy fail to state a claim upon which relief may be granted; his claims regarding supervisory liability are not cognizable in a *Bivens* action; the Court has no personal jurisdiction over defendants Lappin and Norwood; verbal harassment and threats do not rise to the level of a constitutional violation; he cannot recover for emotional or psychological damages without showing physical injury; his claims of wrongful conviction are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); defendants are entitled to qualified immunity; and any claims under the FTCA are time-barred.

determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the burden shifts to the nonmoving party to show that such an issue does, in fact, exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Detailed factual allegations in a verified, *pro se* complaint, based on personal knowledge, may be sufficient to withstand a motion for summary judgment with supporting affidavits containing a conflicting version of the facts. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir. 1979). Where the nonmovant fails to respond to defendants' specific evidence contradicting conclusory allegations in the complaint to show a genuine issue of material fact on which a reasonable jury could find in his favor, however, defendants are entitled to summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

Defendants assert that Scurlock failed to exhaust administrative remedies as to all of his claims, with the exception of his claim that defendants were deliberately indifferent to his serious medical needs regarding his shoulder. An inmate must exhaust "such administrative remedies as are available" to him with respect to the conditions of which he complains. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to "all inmate suits, whether they involve general

circumstances or particular episodes . . . whether they allege excessive force or some other wrong," and whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. *Nussle v. Porter*, 534 U.S. 516, 524 (2002) (stating that "federal prisoners suing under [*Bivens*] must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit."). Moreover, 42 U.S.C. § 1997e(a) requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 94 (2006). That is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88.

A federal inmate's first step toward proper exhaustion is to follow an informal grievance procedure, after which he must file a written formal complaint on the proper form at the institutional level within 20 days of the incident. *See* 28 C.F.R. §§ 542.10, 542.13. He has 20 days to appeal any adverse decision to the regional level, and if he receives an adverse decision at the regional level, he has 30 days to appeal to the BOP's Office of General Counsel. *See* 28 C.F.R. § 542.15. Only when an inmate has filed his claim at all levels of this BOP grievance procedure has he "exhausted" available remedies. *Id.* An inmate's failure to exhaust is an affirmative defense, and the burden is on the defendant to prove the failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).

Defendants present evidence that Scurlock failed to exhaust administrative remedies as to all claims he alleges, except his claim regarding medical treatment for his shoulder.[7] A review of

---

[7] According to Defendants, Scurlock did not file any administrative remedies regarding the alleged attack by defendant Crowe, verbal harassment and threats by defendant Crowe, the failure of the BOP or other defendants to protect him from Crowe, or any conspiracy claims.

Scurlock's administrative remedy filing history in SENTRY, the BOP's electronic records system, reflects that the only administrative remedy sought by Scurlock related to his claims in this case related to inadequate medical treatment for his shoulder. (Wahl Decl., Docket No. 34-1.)[8]

Scurlock attached copies of administrative remedies to his complaint; however, all of these documents relate to his complaints about inadequate medical treatment for his shoulder, not to his other claims. Further, Scurlock's response to the defendants' motion for summary judgment makes no reference to defendants' exhaustion defense.[9] In light of Defendants' specific evidence that Scurlock failed to make proper use of each level of the remedy procedures to present his *Bivens* claims to prison officials before filing this action, I conclude that the record taken as a whole could not persuade a reasonable finder of fact that Scurlock complied with § 1997e(a). *Scott*, 550 U.S. at 380. Accordingly, I will grant summary judgment in favor of the

---

[8] The SENTRY records indicate the Scurlock also filed administrative remedies related to alleged failure to receive certain property. (Docket No. 34-3).

[9] Scurlock does state in his Complaint that when he requested the proper form to file an administrative remedy regarding the alleged assault by Crowe, on June 23, 2008, Peliter told him it would not be in his "best interest to file against a staff member." Compl. at 21. Significantly, Scurlock does not claim that Peliter refused to provide him with an administrative remedy form. However, to the extent that Scurlock may claim that his attempts to file an administrative remedy regarding the alleged assault on June 23, 2008, were frustrated by Peliter's alleged statement, any purported Eighth Amendment claim against Crowe is barred by Virginia's two-year statute of limitations for personal injury claims. Va. Code §§ 8.01-229, 8.01-243(A). A *Bivens* action adopts the statute of limitations that the forum state uses for general personal injury cases. *Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir. 1983) (citing *Johnson v. Railway Express Agency*, 421 U.S. 454, 462 (1975)). But federal law governs the question of when a cause of action accrues. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975). A federal cause of action accrues when "the plaintiff has 'a complete and present cause of action'" or when the plaintiff "can file suit and obtain relief." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997).

Scurlock's claims against Crowe accrued at the time of the alleged assault, on June 23, 2008. Scurlock filed this action on October 26, 2010, after the two-year limitations period had expired. Scurlock does not respond to Defendants' argument that his claim regarding the alleged assault by Crowe is barred by the statute of limitations, and I find no basis in the record to toll the statute of limitations. Accordingly, Scurlocks' *Bivens* claims against Crowe warrant dismissal as time-barred.

Defendants with respect to all of the claims in the amended complaint except those regarding medical treatment for his shoulder, which I address next.

### B. Deliberate Indifference to a Serious Medical Need

In order to prevail on a claim for denial of medical care under the Eighth Amendment, a plaintiff must show deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference to a serious medical need requires proof that the plaintiff prisoner was objectively suffering from a serious medical need and that the prison staff members were subjectively aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Simple malpractice or negligence in treatment does not rise to the level of a constitutional harm. *See Estelle*, 429 U.S. at 105–06; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). A claim that amounts to a disagreement between an inmate and medical personnel over a diagnosis or course of treatment or allegations of malpractice or negligence in treatment is not cognizable under the Eighth Amendment. *Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Defendants concede that Scurlock's shoulder, on which surgery for a left rotator cuff/ac joint repair was performed just days prior to his June 16, 2008, incarceration, constituted a serious medical condition. However, Defendants argue that they provided adequate medical treatment for Scurlock's shoulder condition. Defendants have submitted Scurlock's medical records demonstrating that, during his incarceration at USP Lee from June to December 2008, Scurlock was examined by medical staff on multiple occasions. Medical treatment by staff included wound cleaning and education, suture removal, range of motion exercises, and a

consultation with a physical therapist.[10] Scurlock was also provided a medical idle for three weeks, as well as a lower bunk pass.

In his response to defendants' motion for summary judgment, Scurlock reiterates some of the facts alleged in his complaint, and submits additional medical records, including radiology reports, as well as documents showing he communicated to USP Lee staff that he should not be taken off medical idle and assigned a job.  Having considered the evidence submitted by both sides, I conclude that Defendants are entitled to summary judgment on Scurlock's Eighth Amendment claim.  The evidence shows that Scurlock had a serious shoulder injury, for which he sought and received medical attention on multiple occasions.  Scurlock would have preferred to have multiple outside consultations with an orthopedic specialist; however, he has not shown

---

[10] Specifically, medical records submitted show Scurlock's treatment as follows:

(1) On June 17, 2008 Scurlock was evaluated by a nurse practitioner who removed and changed Scurlock's bandage, cleaned his wound, educated him on wound care, and prescribed him pain medication.

(2) On June 19, 2008, the Nurse Practitioner saw Scurlock again for the purpose of removing his sutures, but was unable to remove them and referred him to Dr. Allred, who removed his sutures on June 20, 2008.  Dr. Allred instructed Scurlock to perform simple range of motion exercises.

(3) On July 29, 2008, Dr. Allred evaluated Scurlock and instructed him on the importance of performing the range of motion exercises.

(4) On August 4, 2008, Scurlock had an outside consultation with a physical therapist, who instructed him on range of motion exercises and provided a written description of a home exercise program.

(5) On August 14, 2008, Dr. Allred wrote an Administrative Note indicating that he had spoken with the physical therapist, who advised that additional therapy sessions were not needed, as long as Scurlock followed the home exercise program.

(6) On September 19, 2008, Scurlock was evaluated following an altercation with another inmate, but denied any injury.

(7) Scurlocks' remaining medical records are from treatment occurring after his transfer to Fort Dix.  In September 2009, he was evaluated by an orthopedic surgeon.  On June 26, 2009, the physician at Fort Dix noted significant range of motion limitations in the left shoulder, as well as pain.  A 2010 MRI of his left shoulder showed postoperative changes from surgery and degenerative changes, but no evidence of a rotator cuff tear.

that such consultations were necessary. Moreover, he has not shown that his condition required additional medical idle, or why he could not perform the specific job assigned. It is well settled that neither a disagreement between an inmate and medical personnel over a diagnosis or course of treatment nor allegations of malpractice or negligence in treatment is a cognizable constitutional claim under the Eighth Amendment. *Estelle*, 429 U.S. at 105-06. Accordingly, I will grant summary judgment in favor of the Defendants.

### III.

For the foregoing reasons, I find that Defendants are entitled to summary judgment on all of Scurlock's remaining claims.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to the parties.

ENTER: this __23rd__ day of August, 2013.

_Norman K. Moon_
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE